**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Pelosi,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-19-08223-PCT-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Christopher Pelosi's Application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act (the "Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16, Pl. Br.), Defendant SSA Commissioner's Opposition (Doc. 17, Def. Br.), and Plaintiff's Reply (Doc. 22). The Court has reviewed the briefs and the Administrative Record (Doc. 13, R.) and now grants the Administrative Law Judge's ("ALJ") decision (R. at 11–23).

**I.    BACKGROUND**

Plaintiff filed his Application on August 28, 2015 for a period of disability beginning on September 1, 2008. (R. at 11.) Plaintiff's claim was denied initially on November 27, 2015, and upon reconsideration on April 27, 2016. (R. at 11.) Plaintiff then testified at a hearing held before the ALJ on February 9, 2018. (R. at 11.) On July 16, 2018, the ALJ denied Plaintiff's Application, which became the final decision on May 31, 2019 when the Appeals Council denied Plaintiff's request for review. (R. at 1–3.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of venous insufficiency with a history of deep vein thrombosis and pulmonary emboli, obesity, and unspecified mood disorder. (R. at 14.) Plaintiff's appeal focuses only on his physical impairments. (Pl. Br. at 3.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded Plaintiff is not disabled. (R. at 23.) The ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ found Plaintiff has the residual functional capacity ("RFC") to "perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except that he can lift and carry up to 10 pounds occasionally and frequently, sit for about four hours out of an 8-hour workday and stand and/or walk about four hours out of an 8-hour workday." (R. at 16.) Plaintiff can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. He can occasionally balance, stoop, and crouch, but can never kneel or crawl. He must avoid hazards such as uneven terrain, sharp objects, moving machinery, and unprotected heights. (R. at 16.)

The ALJ concluded Plaintiff is able to perform "simple, routine tasks." (R. at 16.) Although he cannot perform past relevant work, he can perform a significant number of jobs in the national economy, including a table worker/small parts assembler, lens inserter, and security systems monitor. (R. at 22–23.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside an ALJ's disability determination only if the determination is not supported by substantial evidence or if the ALJ applied the

wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps. The burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment in the regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four, where she assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the final step to determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises two arguments on review: (1) the ALJ improperly rejected the opinion of Plaintiff's treating physician Dr. Nagy, and (2) the ALJ improperly rejected Plaintiff's symptom testimony

#### A. The ALJ did not err in giving minimal weight to Dr. Nagy's opinion.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). If a treating physician's opinion is uncontradicted, the ALJ must state clear and convincing reasons supported by substantial evidence for rejecting the opinion. If the opinion is contradicted by another doctor's opinion, the ALJ cannot reject it without setting forth specific and legitimate reasons supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Even when contradicted, a treating physician's opinion will often be entitled to "substantial weight." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

The record contains two medical opinions from Plaintiff's treating physician, Dr. Ferenc Nagy, M.D. The first was from September 10, 2015. (R. at 778.) Dr. Nagy wrote that Plaintiff had recurrent deep vein thrombosis (DVT) on his right leg and associated pulmonary embolism, as well as chronic shooting pain and swelling in his right ankle due to an old fracture. Dr. Nagy noted Plaintiff's right calf and left ankle were very tender and swollen. He prescribed medication, directed Plaintiff to take Lovenox (an anticoagulant) until the office came up with the correct titration of Coumadin (an anticoagulant), and referred Plaintiff "to hematology for closer monitoring" of Plaintiff's clotting. Dr. Nagy then stated Plaintiff is unable to work due to his "potentially life threatening venous blood clot formation problems." If an employer knew about his DVT, "he would never be offered a job"—even a stationary desk job would expose him to clot formation. (R. at 778.)

The ALJ gave little weight to Dr. Nagy's September 2015 opinion "because it was unsupported by clinical notes and the record as a whole." (R. at 20.) Plaintiff also

discontinued blood thinners and testified that he spends most of his day sitting around, and "Dr. Nagy's own progress notes fails [sic] to show that this promotes or has caused blood clots." (R. at 20, citing R. at 933.) The Court finds these constituted specific and legitimate reasons for rejecting Dr. Nagy's opinion.

An ALJ need not accept the opinion of a treating physician that is brief, conclusory, or inadequately supported by the record or objective medical findings. *Thomas*, 278 F.3d at 957; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Dr. Nagy's September 2015 opinion was all of those. The opinion was a single page, the contents of which the Court just recited almost in full. It involved no apparent clinical testing, and the Court could not locate in the record any notes from previous appointments with Dr. Nagy that support his conclusion that Plaintiff cannot work. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1988) (discrediting medical opinion of treating physician who had prior relationship with claimant where only report in record was in conclusionary form). Moreover, in the progress notes the ALJ referred to, from March 3, 2018, Dr. Nagy wrote that Plaintiff has had only two DVT events—one in 2009 and one in 2015. (R. at 933.) He noted Plaintiff stopped his Coumadin a year and a half before that March 2018 appointment. Accordingly, Plaintiff had not had a DVT event in the two and half years since Dr. Nagy's September 2015 opinion, despite ceasing anticoagulation treatment and spending most of his time sitting around. The ALJ therefore properly gave little weight to Dr. Nagy's conclusion that Plaintiff is unable to work due to the life-threatening effects a stationary job would have on his clotting.

Dr. Nagy's second medical opinion, which included a functional assessment of Plaintiff's physical capacities, is dated January 7, 2016. (R. at 823–25.) He listed Plaintiff's diagnoses as chronic low back pain, chronic right ankle pain, chronic venous thrombosis/pulmonary embolism, and bipolar mood disorder. (R. at 823.) He recorded symptoms of chronic low back pain, right ankle pain, swelling, neuropathic pain, chronic right leg venous insufficiency, and edema, and noted Plaintiff's swollen and painful right calf and ankle. On the functional assessment, Dr. Nagy indicated Plaintiff could stand and

walk for two to four hours per day and sit for two to four hours per day, alternating between the two; lift 10 pounds rarely; use fine manipulation for 100% of the workday; reach overhead for only 10% of the workday; grasp, turn, and twist objects for 40% of the workday with his right hand and 100% of the workday with his left hand; rarely twist his body or stoop or climb stairs; and never crouch, squat, or climb ladders. Dr. Nagy opined that Plaintiff would miss four or more days of work per month. (R. at 825.)

The ALJ gave Dr. Nagy's opinion's little weight because (1) the assessment was based primarily on Plaintiff's subjective complaints; (2) the limitations were inconsistent with Plaintiff's claimed physical activities; and (3) the limitations were internally inconsistent. (R. at 20.)

An ALJ can properly discount the opinion of a treating provider if that opinion is "based to a large extent on a claimant's self-reports that have been discounted as credible." *Tommasetti*, 533 F.3d at 1041; *see also Bray*, 554 F.3d at 1228. "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). As the Court discusses later in this Order, the ALJ properly discounted Plaintiff's symptom testimony. As for Dr. Nagy, there is no indication as to what type of clinical observations—if any—he relied on in filling out the assessment of Plaintiff's physical limitations. *See Tommasetti*, 533 F.3d at 1041. Because the ALJ found Plaintiff's testimony not entirely credible, she did not err in discounting Dr. Nagy's opinion for reliance on the same.

An ALJ may discount a treating physician's opinion of a claimant's physical limitations when the opinion conflicts with the activities a claimant engages in. *Ghanim*, 763 F.3d at 1162; *Conley v. Astrue*, 471 F. App'x 758, 760 (9th Cir. 2012) (giving little weight to the doctor's opinion that the claimant could perform only sedentary work when the record revealed she swam everyday in the river near her home). Here, Plaintiff testified that he had taken up welding, an exertional activity that requires hand manipulation. He stopped welding not because he was unable to physically perform it, but because he ran

out of welding wire. (R. at 56.) Medical records from around the time of Dr. Nagy's 2016 opinion also reveal that Plaintiff chopped wood, another physically demanding activity, and he testified at the hearing that he enjoys fishing. (R. at 56, 801.) Both activities involve overhead movements, hand manipulation, and twisting of the body. While the Court is aware of the maxim that a claimant "need not vegetate in a dark room" to be considered disabled under the Act, *Molina*, 674 F.3d at 1113, Plaintiff's engagement in these particular activities undermines Dr. Nagy's assessment of functional limitations. For this reason, the ALJ's discounting of Dr. Nagy's opinion is specific and legitimate and supported by substantial evidence.

Finally, the ALJ discounted the opinion because the limitations were "internally inconsistent in terms of manipulative activities and the ability to concentrate versus moderately stressful work, which [Dr. Nagy] said the claimant can do." (R. at 20.) The Court is not entirely sure what the ALJ means or what relationship she is drawing between manipulative activities and moderately stressful work. However, even if the Court concluded this was an invalid reason to reject Dr. Nagy's opinion, it is harmless error if substantial evidence remains to support the ALJ's finding and the error does not affect the validity of the ALJ's ultimate decision. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Because the ALJ gave two valid reasons supported by substantial evidence for giving Dr. Nagy's opinions little weight, the ALJ's use of a single erroneous reason is harmless and the Court will not disturb the ALJ's analysis. *See Carmickle*, 533 F.3d at 1162.

### B. The ALJ did not err in discounting Plaintiff's symptom testimony.

Credibility is the province of the ALJ, who engages in a two-step analysis when evaluating a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Where, as here, the ALJ determines Plaintiff has produced objective medical evidence of an underlying impairment and is not malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting symptom testimony associated with

the underlying impairment. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is the most demanding standard in Social Security cases. *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

In making credibility determinations, an ALJ may consider "the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Here, the ALJ presented two bases for discounting Plaintiff's testimony: (1) Plaintiff's noncompliance with medication and treatment, and (2) inconsistency with his daily activities.

After summarizing Plaintiff's medical records and hearing testimony, the ALJ determined Plaintiff's "lack of compliance with treatment and his doctor's advice suggests that [his] symptoms are not as limiting as he alleged" and undermines the reliability of his statements. (R. at 19.) Failure to comply with treatment recommendations and routines is a valid reason for discounting a claimant's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1114 n.6 (9th Cir. 2012).

The ALJ listed multiple instances that amount to essentially a pattern of noncompliance. On December 31, 3014, Plaintiff presented at an emergency department, where he was prescribed Lovenox and warfarin (the generic term for an anticoagulant). Treatment notes from several weeks later showed Plaintiff had not taken his Lovenox shots and had taken only two warfarin pills. (R. at 718.) In August 2015, a doctor wrote Plaintiff is "supposed to be on [C]oumadin for life [but] has been off it for a couple of months." (R. at 683.) Another doctor noted his past noncompliance with Coumadin and said he is "at high risk" for noncompliance. (R. at 669.) As previously mentioned, Dr. Nagy wrote that as of the time of Plaintiff's March 2018 appointment, he had not been taking Coumadin for a year and a half. (R. at 933.) Plaintiff testified at the hearing that he had not taken blood thinners for months. (R. at 50.) He also was not wearing his prescribed compression stockings. Although it was because one stocking was ripped, that had occurred several weeks prior. (R. at 54.)

Plaintiff argues the ALJ erred in discounting his credibility on this basis because she "failed to account for Dr. Nagy's notation that [Plaintiff's] medical care was hindered by his living situation and that other providers had noted that Pelosi was either homeless and/or without medical insurance." (Pl. Br. at 21.) It can be improper for an ALJ to fault a claimant for noncompliance if the claimant cannot pay for the treatment. *See Regenitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294, 1297 (9th Cir. 1998). However, here, the citations to noncompliance above do not indicate it was because of his social or economic conditions. Moreover, the records Plaintiff points to that mention his homelessness did not indicate that precluded or affected his medical treatment. (R. at 699, 866.) Another record reflected that while he was either uninsured or on his ex-wife's insurance for a time, he was on the state's health insurance as of at least December 2014. (R. at 769.) Finally, at the hearing, Plaintiff testified he stopped taking blood thinners because he heard it was not good for him (he could not remember who told him that and that recommendation was not located in the record), not because he lacked access to it or other medical care. (R. at 46.) The Court concludes the ALJ's discounting of Plaintiff's testimony because of his history of noncompliance was specific, clear and convincing, and supported by substantial evidence.

The ALJ also discounted Plaintiff's testimony because his daily activities support an RFC of being able to perform a limited range of sedentary work. In other words, she concluded Plaintiff's activities of daily living are inconsistent with a finding of total disability. *See Molina*, 674 F.3d at 1113.

An ALJ may properly reject a claimant's testimony because his daily activities indicate he is more functional than alleged. *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). The ALJ pointed to the fact that Plaintiff goes on daily walks for a few blocks (he testified he lives on a steep hill), cares for his dog, and does housework, including taking the garbage out, sweeping, and vacuuming. (R. at 55–58.) Plaintiff testified that he enjoys fishing at the lake, welding, and hunting. And although he stopped welding, and his hunting is limited, he testified that it was because of reasons other than a physical inability to perform them. As already mentioned, a treatment record from

2015 noted Plaintiff was recently chopping wood. The ALJ also noted Plaintiff travelled almost two hours to the hearing (his ex-wife drove) and got out at two rest stops to stretch his legs for a few minutes. She found this pertinent because it demonstrates he can sit for prolonged periods with a little time to walk and stretch between.

While the above activities certainly do not suggest that Plaintiff could compete in a triathlon, the ALJ's interpretation that the activities are inconsistent with a claim of total disability is a reasonable interpretation of Plaintiff's testimony and the medical record as a whole, and is supported by substantial evidence. It is not this Court's role to second-guess it. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

**IT IS THEREFORE ORDERED** affirming the July 16, 2018 decision of the Administrative Law Judge, as upheld by the Appeals Council on May 31, 2019.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 18th day of August, 2020.

Honorable John J. Tuchi
United States District Judge